**In re Ernest W. GIBBS, d/b/a Gibbs Oil Company and Sandra Gibbs, d/b/a My Fair Lady, Debtors.**

**FEDERAL MUTUAL INSURANCE CO., Plaintiff,**

v.

**Ernest W. GIBBS, d/b/a Gibbs Oil Company and Sandra Gibbs, d/b/a My Fair Lady, Defendants.**

**Bankruptcy No. 80–02511–2.
Adv. No. 80–0678–2.**

United States Bankruptcy Court,
W. D. Missouri.

May 20, 1981.

Charles W. Fairchild, Kansas City, Mo., for plaintiff.

David H. Miller, Richmond, Mo., for debtors.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Ernest W. Gibbs, d/b/a Gibbs Oil company, filed a petition under Chapter 7 on August 8, 1980. In his schedules he listed an obligation to Federated Mutual Insurance Co. arising out of payment by FMI to the State of Missouri for motor fuel taxes which debtor was obligated to pay and did not. The parties have stipulated that debtor was liable for such taxes and that FMI satisfied that liability in the sum of $20,000.00, the full amount of its surety bond. The parties also stipulated that debtor signed the bond application which contains an indemnity agreement and that the bond was furnished to the State by debtor in accordance with the provisions of Section 142.070(3) R.S.Mo.1978. The issue is whether debtor may discharge the indemnity obligation as merely a contractual one between the debtor and his surety or whether the surety, by subrogation, succeeds to the status of the creditor, the State of Missouri, and holds a nondischargeable debt because the obligation paid, the taxes, was a nondischargeable debt.

Section 523(a)(1)(B) provides in part that: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

for a tax or a customs duty—of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title ..."

Section 507(a)(6)(E) accords priority to excise taxes on "a transaction occurring before the date of the filing of the petition for which a return ... is last due ... after three years before the date of the filing ...". Gasoline and special fuel taxes are generally considered to be excise taxes. 3 Collier on Bankruptcy ¶ 523.06[8] (15th Ed. 1980). As a distributor of motor fuels, debtor was obligated to pay taxes upon those transactions set out in the statute. Section 142.020 R.S.Mo.1978.

The surety in this case holds an agreement of indemnity given it by the debtor. But the right to recover expenditures made

under the bond does not rest upon that agreement.

> "Legal subrogation is a creature of equity, existing independently of custom or statute ... Legal subrogation does not depend on contract, assignment, or privity. It is not created by the order of the court recognizing it, but follows as the legal consequence of the acts and relationship of the parties. It may arise ... where one not primarily bound to pay a debt ... nevertheless does so, ... from his legal obligation, as in the case of a surety ...". 73 Am.Jur.2nd, "Subrogation", § 3.

"The doctrine of subrogation ... still finds its most frequent application where a guarantor or a surety makes good the default of his principal. On discharging the obligation of the principal, the surety is generally subrogated to the rights of the creditor ... and becomes entitled to ... the means or remedies the creditor has for enforcing payment against the principal ..." 73 Am.Jur.2nd Subrogation § 53 (1974). See, generally, *First State Bank v. Reorganized School District R–3, Bunker*, 495 S.W.2d 471 (Mo.App.1973), in which the Court noted that the surety succeeds to the rights of the contractor and the obligee on the bond when it makes payment and further "that the surety's right of equitable subrogation does not arise out of the assignment contained in the application for the bond ... [but] arises independently of contract by operation of law under familiar principles of equity." Supra, at 485.

▮ The great weight of authority in these cases is that regardless of agreements of indemnity, the surety is subrogated to the rights of the creditor whose claim it pays and that the surety's right to reimbursement is of the same character as the creditor's claim. See, for example, *In re Columbia Tobacco Co.*, 121 F.2d 641 (2nd Cir. 1941), where the surety paid tax claims and was held to have a priority claim by subrogation against debtor for the amount of those payments. See also *In re Rogers*, 101 F.Supp. 555 (S.D.Cal.1951).

▮ The Court finds that the payment of FMI to the State of Missouri was for taxes which should have been paid by the debtor, that the taxes were nondischargeable, that FMI was subrogated to the State by virtue of its payment and that its claim against debtor Ernest W. Gibbs is therefore nondischargeable. On the other hand, the files of the Court show that Sandra Gibbs had a business of her own and no apparent obligation to pay the taxes due from Gibbs Oil Company. The surety, therefore, discharged no obligation of Sandra Gibbs and has no subrogation claim against her. The claim of FMI against Sandra Gibbs is found to be dischargeable. Cf. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967).

SO ORDERED this 20th day of May, 1981.