**In re Thomas Michael CAFFREY, Sr., Debtor.**

**Gloria K. SALAKI and Richard Sullivan, Plaintiffs,**

v.

**Thomas Michael CAFFREY, Sr., Defendant.**

Bankruptcy No. 86–04424–3–2.
Adv. No. 87–0022–2.

United States Bankruptcy Court, W.D. Missouri.

Aug. 7, 1987.

Richard W. Sullivan, Independence, Mo., for plaintiffs.

C. John Forge, Independence, Mo., for debtor/defendant.

Gene A. DeLeve, Kansas City, Mo., Trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This adversary comes before the Court on the complaint of the ex-wife in three Counts for non-dischargeability of specific debts under § 523 and one Count of non-dischargeability under § 727. The Court will address them in reverse order.

As to Count IV under § 727, plaintiff first alleged that defendant had disposed of property and a business within one year of filing bankruptcy. The property consisted of a residence in which plaintiff and defendant had resided and occupied under a contract for deed from defendant's mother. Defendant had executed a Quit Claim to his mother. There was no evidence other than what defendant testified to as to his failure to pay his mother as per the terms of the contract and his relinquishment rather than forcing her to go to Court to remove him. Further, from his testimony, it would appear that there was no equity in the residence at the time of the Quit Claim. Almost identical circumstances surrounded the surrender of the "Hi Boy" business back to the owner. Defendant testified he was in default under the lease of the business. He could not pay the lease payments plus there was a substantial tax bill he could not pay and he surrendered the restaurant rather than force the lessor to go to Court. Defendant was not related to the lessor.

Debtor's testimony was not inherently implausible and there was no evidence presented contrary to his. The Court, therefore, rules against plaintiff on Count IV.

Count III was targeted at the aforementioned turnover of the residence and the "Hi-Boy Restaurant" as well as complaining that debtor had concealed a snow removal business and a food distribution system. The "snow removal business" turned out to be a blade and hydraulic lift on a used Ford Bronco. The Bronco had not been concealed from the schedules and had been traded off with a blown engine. The "food distribution system" turned out to be the making of onion rings in the basement of the "Hi Boy". Defendant and the lessee of another "Hi Boy" had made onion rings for their two restaurants. That operation ceased when defendant turned back the restaurant. No evidence contrary to the above testimony of defendant was presented; it was not inherently implausible. The Court, therefore, rules against plaintiff on Count III.

Count II alleges the deliberate intent of defendant to defraud creditors based on the same set of facts and adding only that defendant promised to pay $100.00 per month as a result of a "garnishment" which he only made three payments on before filing bankruptcy.

Needless to say there was not sufficient evidence to disprove defendant's previously related version of what happened, much less a deliberate intent to hinder, delay or defraud creditors. Count II is, therefore, ruled against plaintiff.

■ Count I is somewhat different as to thrust and effect. Although plaintiff and defendant were separated prior to the date when the 1983 tax return 1040 was due (April 15, 1984), they were still married. Plaintiff was not employed and all income for the year was earned by defendant. Defendant had not paid sufficient withholding throughout 1983 and if the parties filed a joint return as husband and wife, defendant's tax liability would be substantially reduced although it would still amount to $5,272.29. On the other hand, plaintiff's liability would be increased from zero to $5,272.29 since defendant proposed that they file a joint return and that he would pay the tax later. Plaintiff acceded to defendant's request to sign a joint return, defendant did not pay the tax, and plaintiff has already had to pay $2,354.00 (from the sale of some real estate) of said tax. Plaintiff seeks to have said $2,354.00 declared nondischargeable as to her since it would be nondischargeable as to the Internal Revenue Service under § 523(a)(1). Although clearly this is not identical to the typical surety situation, plaintiff likens herself to the corporate surety who has guaranteed payment of a tax for a debtor.

There is a split of authority on the issue of whether sureties have been allowed to have the benefit of § 523(a)(1) nondischargeability for taxes which they have paid for the debtor's obligation. The weight of authority holds that where a surety pays the nondischargeable obligation of its principal, the surety *is* subrogated not only to the assured's claim against the principal, but also to the non-

dischargeable quality of the obligation as well. *See, In re Gibbs,* 11 B.R. 320 (Bkrtcy.W.D.Mo.1981); *Western Surety Co. v. Waite,* 698 F.2d 1177 (11th Cir.1983); *Gilbert v. United States Fidelity & Guaranty Co.,* 180 F.Supp. 794 (M.D.Ga.1959); *aff'd* 274 F.2d 823 (5th Cir.1960); (taxes nondischargeable under former [17(a)(1) of the Bankruptcy Act of 1898, as amended); *In re Morris,* 31 B.R. 474 (Bkrtcy.N.D.Ill. 1983); *In re Woerner,* 19 B.R. 708 (Bkrtcy. D.Kan.1982); *In re Co-Build Cos.,* 21 B.R. 635 (Bkrtcy.E.D.Pa.1982); *St. Paul—Mercury Indemnity Co. v. Donaldson,* 225 S.C. 476, 83 S.E.2d 159 (1954). More specifically, under the Bankruptcy Code, one who pays the tax claims for another may be subrogated to the right of the taxing authority to seek exception to discharge. *In re Alloway,* 37 B.R. 420, Bankr.L.Rep. p. 69, 764 (Bkrtcy.E.D.Pa.1984).

The minority of cases holding to the contrary, base their findings on a Supremacy Clause argument. The court in *National Collection Agency, Inc. v. Trahan,* 624 F.2d 906 (9th Cir.1980), said that the state law allowing exception to discharge conflicted with the bankruptcy policy favoring discharge of debts and a fresh start. The state law furthers, however, the overriding need to assure tax collection by government entities. The court said the tax collection policy would not be promoted, however, because the state is paid by the surety whether or not the debtor's subsequent debt to the surety is not dischargeable. *See also, In the matter of Campbell,* 74 B.R. 805 (Bkrtcy.M.D.Fla.1987); *In re Smothers,* 60 B.R. 733 (Bkrtcy.W.D.Ky. 1986) (may be distinguished because involved a partnership where the ultimate loss was not necessarily to fall on the debtor); *Leinkauf v. Wellhouse,* 1 Ga.App. 670, 57 S.E. 961 (1907).

In light of the foregoing cases, the majority rule (including the Western District of Missouri) seems to allow subrogation to a corporate surety that has been required to pay a tax liability for a debtor. This Court can discern no reason why it should not follow such a rule, absent special circumstances. However, defendant has

raised the issue that plaintiff is not comparable to a surety in that she also signed the tax return and, therefore, was also primarily liable on the tax obligation (rather than being secondarily liable like a surety) and was paying her own obligation when the IRS took the $2,354.00 from the sale of the realty.

The case closest to the facts in this case is *In re Alloway*, 37 B.R. 420 (Bkrtcy.E.D.Pa.1984). At first blush such case appears to rule against the spouse who has had to pay such a tax. However, close reading reveals that Judge Goldhaber's ruling was based: first, on the fact that the plaintiff therein had failed to show that the tax itself was not tainted by the passage of the times mandated in § 523; and second, on the fact that plaintiff therein had failed to prove that the basis underlying the transfer of the marital property was in the nature of alimony, maintenance or support. Plaintiff herein made no claim that the property transferred to her was in the nature of alimony, maintenance or support. Indeed in view of the wording of the decree of dissolution, plaintiff would have been hard pressed to sustain any such contention. However, the time frames were totally consistent with the requirements of § 523(a)(1) and sections set out therein. Therefore, the ruling in *Alloway* is not persuasive on the facts at hand. In fact, *Alloway*, in its reasoning, reinforces this Court's decision that plaintiff should be subrogated to the position the IRS would have had if she had not been forced to pay the tax. As Judge Goldhaber correctly points out, subrogation is uniquely the child of equity and this Court believes that it is hardly equitable to inveigle a separated spouse to sign a joint tax return thus creating a liability to her that would not otherwise exist; then fail to pay the tax properly attributable to the debtor alone (he had the only income); and finally discharge the otherwise nondischargeable liability because the foregoing commissions or omissions as the case may be, have forced payment by the former spouse. Count I is, therefore, ruled against defendant and the obligation of $2,354.00, together with interest at 9% per annum from date

of payment by plaintiff to IRS, is determined to be NONDISCHARGEABLE as to plaintiff.