In re Homer Clyde NORRIS, d/b/a Sportsman Tackle & Marine, a/k/a Sportsman Fishing Store, Debtor.

SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

Homer Clyde NORRIS, Defendant.

Bankruptcy No. 1-85-00991.
Adv. No. 1-85-0212.

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 20, 1989.

Hoyt O. Samples, Chattanooga, Tenn., for plaintiff.

Harold L. North, Jr., of Ray & North, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

Before the debtor, Homer Clyde Norris, filed for bankruptcy, he sold hunting and fishing licenses for the state of Tennessee. The plaintiff, Safeco, issued a $10,000 surety bond to repay the state if the debtor failed to pay the fees he collected or failed to account for the licenses he received. The debtor failed to pay the state for licenses sold or not returned, and as a result, Safeco was compelled to pay the state the full amount of the bond. Safeco now has a $10,000 claim against the debtor.

Safeco alleges that the $10,000 claim was not discharged in the debtor's bankruptcy. Safeco asserts three independent grounds for nondischargeability of the debt: the debt is (1) a nondischargeable tax debt, or (2) a debt for embezzlement, or (3) a debt for fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C.A. § 523(a)(1) & (a)(4) (West 1979 & Supp.1989).

As to all three grounds, Safeco is attempting to take the place of the state. If the license fees were a tax, they were owed to the state, not to Safeco. If the debtor embezzled the unpaid fees, he embezzled them from the state. If the debtor had a fiduciary relationship, it was with the state, not with Safeco.

For Safeco to prove that the debtor owes it a non-dischargeable tax debt, Safeco must prove:

(1) The fees for hunting and fishing licenses were a tax owed to the state;

(2) The debtor's debt for failing to collect the tax or pay it to the state is within the category of nondischargeable tax debts as set out in § 523(a)(1);

(3) Safeco, as a result of paying the nondischargeable tax debt, is subrogated to the state's right to have the debt held nondischargeable.

The parties have agreed that the first and third questions can be answered on the record without a trial, since they are almost entirely questions of law. The court will decide in reverse order. First, assuming the debtor owes the state a nondischargeable tax debt for failure to collect or pay the license fees, is Safeco subrogated to the state's right to have the debt held nondischargeable? Second, if Safeco can be subrogated to the nondischargeability of a tax debt to the state, were the license fees a tax?

(1)

Bankruptcy Code § 507(a)(7) provides that certain tax debts have priority in the order of payment in a bankruptcy case. These priority taxes are the first category of taxes excepted from discharge by § 523(a)(1)(A). 11 U.S.C.A. §§ 507(a)(7) & 523(a)(1)(A) (West Supp.1989).

■ When the debtor filed his bankruptcy case and when Safeco filed this suit, § 523(a)(1)(A) referred to § 507(a)(6), but § 507(a)(6) no longer dealt with taxes since the tax priority had been shifted to § 507(a)(7). 3 L.King, Collier on Bankruptcy ¶ 523.06, footnote 3b (15th ed. 1989). This inadvertent failure of Congress to change the reference in § 523 when it moved the tax priority from § 507(a)(6) to (a)(7) can be corrected by the court in order to make § 523(a)(1)(A) completely effective. *In re Clate*, 69 B.R. 506 (Bankr.W.D.Pa. 1987); 2A N. Singer, Sutherland Statutory Construction § 47.36 (4th ed. 1984).

Bankruptcy Code § 507(d) says that a surety who has paid a priority tax debt is not subrogated to the government's tax priority. 11 U.S.C.A. § 507(d) (West 1979). However, the right to priority under § 507 is not required in order for a tax debt to be nondischargeable under § 523(a)(1)(A). Section 523(a)(1)(A) excepts from discharge taxes of the kinds described in § 507(a)(7), not taxes "entitled to priority" under § 507(a)(7).

■ Thus, § 507(d) prevents Safeco from being subrogated to the priority of the state's tax claim but does not prevent it from being subrogated to the nondischargeability of the state's tax claim. 11 U.S.C.A. § 523(a)(1)(A) (West Supp.1989); *Cooper v. Cooper*, 83 B.R. 544, 17 Bankr. Ct.Dec. 276, 18 Collier Bankr.Cas.2d 668 (Bankr.C.D.Ill.1988); *Gordon's Jewelry Co. v. Goldstein*, 66 B.R. 909 (Bankr.W.D.Pa. 1986).

This express denial of subrogation to the priority of a tax claim suggests that a surety is subrogated to all other elements of the tax claim, including nondischargeability. Furthermore, Bankruptcy Code § 509(a) provides:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, the claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C.A. § 509(a) (West 1979).

Unfortunately, the meaning of § 509 as a whole is not easily discovered. It implies that a codebtor or surety who pays the debtor's debt to the creditor acquires all the creditor's rights, including an exception to discharge if one applies.

There is a problem with this inference from § 509. The same problem exists with regard to the inference from § 507(d) that a surety is subrogated to all the aspects of a tax claim except priority. Subrogation may mean nothing more than that the surety has a claim; the statute excepting tax debts from discharge may expressly or by implication be limited to tax debts that are still owed to the government.

One court of appeals has followed this path. It held that the surety's claim was discharged even though the surety paid a nondischargeable tax debt. The court of

appeals concluded that there was no need to except the surety's claim from discharge, since excepting it from discharge would make no difference to whether the government was paid. *National Collection Agency, Inc. v. Trahan,* 624 F.2d 906 (9th Cir.1980).

Other courts have also held that a subrogation claim is discharged even though the claimant paid nondischargeable taxes. *Campbell v. Campbell,* 74 B.R. 805 (Bankr. M.D.Fla.1987) (dicta as to a tax surety since the claim under § 523(a)(1) had been dropped); *Ridge v. Smothers,* 60 B.R. 733, 14 Collier Bankr.Cas.2d 1120 (Bankr.W.D. Ky.1986) (dicta as to a tax surety since decided on the narrower ground that subrogation did not apply to a co-debtor); *Don-Sue Investments, Inc. v. Lapille,* 53 B.R. 359 (Bankr.S.D.Ohio 1985) (co-debtor not entitled to subrogation). See 11 U.S.C.A. § 509(b)(2) (West 1979).

The majority rule appears to be the opposite rule, the rule that a surety who pays a nondischargeable tax debt has a nondischargeable tax claim against the debtor. *Western Surety Co. v. Waite,* 698 F.2d 1177, 10 Bankr.Ct.Dec. 464, 8 Collier Bankr.Cas.2d 619 (11th Cir.1983); *Gilbert v. United States Fidelity and Guaranty Co.,* 180 F.Supp. 794 (M.D.Ga.1959), 274 F.2d 823 (5th Cir.1960); *Rankin v. Alloway,* 37 B.R. 420 (Bankr.E.D.Pa.1984); *Hancock v. Country Mutual Ins. Co.,* 36 B.R. 709 (Bankr.S.D.Ill.1984); *Woerner v. Farmers Alliance Mutual Ins. Co.,* 19 B.R. 708, 9 Bankr.Ct.Dec. 63, 6 Collier Bankr.Cas.2d 590 (Bankr.D.Kan.1982); *Federal Mutual Ins. Co. v. Gibbs,* 11 B.R. 320, 7 Bankr.Ct.Dec. 878 (Bankr.W.D.Mo. 1981); *see also Cooper v. Cooper,* 83 B.R. 544, 17 Bankr.Ct.Dec. 276, 18 Collier Bankr.Cas.2d 668 (Bankr.C.D.Ill.1988) (co-debtor, rather than surety); *Salaki v. Caffrey,* 77 B.R. 219 (Bankr.W.D.Mo.1987); *Gordon's Jewelry Co. v. Goldstein,* 66 B.R. 909 (Bankr.W.D.Pa.1986) (buyer rather than surety).

The court will follow the majority rule that a surety's subrogation to the government's tax claim includes the right to have the debt excepted from discharge.

The court disagrees with the contrary decision of the ninth circuit in *National Collection Agency, Inc. v. Trahan,* discussed above.

The ninth circuit's decision is based on the proposition that taxes are excepted from discharge purely to protect government revenue. The general exception from discharge for recently incurred taxes, as opposed to stale taxes, represents a compromise between protecting government revenue and giving the debtor a financial fresh start. 1A J. Moore, Collier on Bankruptcy ¶ 17.01 [3.2] (14th ed. 1988). However, the other exceptions in § 523(a)(1) are not based purely on the protection of government revenue.

For example, the statute excepts from discharge a tax with respect to which a return was not filed, a tax with respect to which the debtor filed a late return within two years before bankruptcy, and a tax with respect to which the debtor made a fraudulent return or willfully attempted to evade or defeat the tax. 11 U.S.C.A. § 523(a)(1)(B) & (C) (West Supp.1989). Likewise, the exception for taxes that the debtor was responsible for collecting appears to be based also on the debtor's neglect or wrongdoing in failing to collect or pay the tax. 11 U.S.C.A. §§ 507(a)(7)(C) & 523(a)(1)(A) (West Supp.1989).

To the extent the exceptions are meant to punish a taxpayer's neglect or wrongdoing, the surety who pays the nondischargeable tax should be entitled to a nondischargeable claim in the government's place.

Suppose, however, that the exception from discharge is intended purely to preserve government revenue. If the policy of the exception from discharge is to promote the collection of taxes, then that policy is served indirectly by excepting the surety's subrogation claim from discharge. The question is whether the policy behind the exception is a narrow policy to allow the collection of nondischargeable taxes from debtors or a broader policy of promoting the payment of nondischargeable taxes by debtors *and sureties.* This court adopts the broader view of the policy behind the exception.

The debtor could argue that this result is unfair because he should not have to pay the surety before bankruptcy and still have to pay the taxes himself. The court is not overly concerned with the implication of this argument that a debtor who pays for a surety bond before bankruptcy is in effect buying the discharge of an otherwise non-dischargeable tax debt. The court is more concerned with the choice given to a debtor if the debt to the surety is dischargeable.

A debtor who fails to pay taxes before bankruptcy usually bears the burden of that failure after bankruptcy by being liable for a nondischargeable tax debt. However, if the debt to the surety is dischargeable, then the debtor can choose not to pay taxes with the knowledge that he can escape liability by filing bankruptcy and discharging the surety's claim. A debtor should not be given this choice. Therefore, the court adopts the view that the policy behind the dischargeability statute is better served by making the surety's claim nondischargeable to the extent the surety paid a nondischargeable tax.

Furthermore, the unfairness argument fails for another reason. Even if the debtor's commission on sales of licenses was not enough to cover the expense of the surety bond, the ability to sell licenses is doubtlessly important to bringing in customers to a bait, tackle, and hunting supplies store. The surety bond was a business cost incurred by the debtor for the state's protection so that he could sell licenses for the financial benefit of his own business. The court sees no unfairness in this situation in holding the debtor liable to the surety to the extent the fees it paid were nondischargeable taxes.

The ninth circuit found another problem with excepting a surety's subrogation claim from discharge. Since a bankruptcy discharge is intended to give an individual debtor a financial fresh start, the exceptions from discharge are narrowly construed against creditors and for the benefit of debtors. 3 L.King, Collier on Bankruptcy ¶ 523.05 (15th ed. 1989). The court of appeals held that excepting a surety's sub-rogation claim from discharge conflicted with this policy.

A debtor's fresh start is not overburdened by excepting a surety's subrogation claim from discharge. The debtor's fresh start is the same; he owes the same amount of nondischargeable tax debt; the only difference is whether the debtor owes the debt to the government or the surety. The court has already answered the argument that it is unfair for the debtor to be forced to pay for the surety bond and still be liable for nondischargeable taxes.

The court concludes that Safeco can be subrogated do the nondischargeability of a state tax claim.

The court turns now to the question of whether fees for hunting and fishing licenses are a tax.

(2)

Whether the fees are a tax under the priority statute or the exception from discharge is a question of bankruptcy law. It is not a question of state law or a question of federal law on subjects other than bankruptcy. *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906).

The same question arose under the priority and dischargeability provisions in the prior law, the Bankruptcy Act of 1898. 1A J. Moore, Collier on Bankruptcy ¶ 17.14[9] (14th ed. 1988). The court has found nothing in the legislative history of the present Bankruptcy Code to indicate a change in the meaning of "tax". Thus, decisions under the Bankruptcy Act of 1898 are still good law on the question of whether a fee is a tax or not, except for decisions that treat the question as controlled by state law.

The easiest distinction between a tax and a non-tax debt arises when the government is doing business in much the same way as a private enterprise. When a government owned water company sells water by the gallon, the bill is for the purchase of the water; it is not a tax. *County Sanitation District v. Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir.1982) (charges for wastewater treatment); *In re Hills*, 221 F. 260, 34 Am.Bankr.Rep. 43 (2d

Cir.1915); *but see McDowell v. City of Barberton, Ohio*, 38 F.2d 786 (6th Cir. 1930); *In re Industrial Cold Storage & Ice Co.*, 163 F. 390, 20 Am.Bankr.Rep. 794 (E.D.Pa.1908).

■ Of course, the furnishing of water may be considered a public purpose, and the money earned would go to the public purpose of maintaining water service. As a result, the conclusion that the water charges are not a tax cannot rest easily on the theory that the money is not used for a public purpose. Likewise, when the government rents land to an individual for his private use, the rent is still used for the public purpose of maintaining public land. The distinction does not depend on how the government uses the money but whether it is selling, renting, or otherwise doing business with the person who is charged the fee.

The state clearly is not selling or renting anything in particular to hunters and fishers when it sells them hunting or fishing licenses. Thus, the fees are not prevented from being a tax on the basis of the distinction between the government's business debts and tax debts.

In *United States v. River Coal Co.*, the court of appeals for this circuit held that mine reclamation fees owed by a coal mining company were a tax. *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 12 Bankr.Ct.Dec. 606, 11 Collier Bankr.Cas.2d 1432 (6th Cir.1984).

The important point of the decision is the court of appeals' distinction between a mining permit fee and the mine reclamation fees. The court implied that the fee for a mining permit is not a tax because (1) a mining permit fee is voluntary, at least in the sense that a person can choose not to mine coal, and (2) a mining permit bestows an individual benefit on the person.

The court of appeals, however, did not decide that a mining permit fee is not a tax. The court of appeals was not faced with that question. It simply used the mining permit fee as a straw man to be knocked down for the purpose of showing that the mine reclamation fees were a tax.

The court of appeals also based the distinction between a mining permit fee and a mine reclamation fee on a case that had nothing to do with the meaning of "tax" in the bankruptcy statutes. *National Cable Television Assn., Inc. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974).

The case involved the constitutionality of a grant of power from Congress to the FCC (Federal Communications Commission). The FCC had imposed on cable television companies a fee that was determined the same way as a gross receipts tax. The usual question in delegation of authority cases is whether Congress has set clear enough guidelines to assure that the agency is carrying out the will of Congress. *Mistretta v. United States*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Justice Douglas, however, phrased the question as whether the FCC had imposed a fee or a tax. The Supreme Court held that the statutory guidelines constitutionally allowed the FCC to impose fees according to the value to the cable television companies of benefits bestowed on them by the FCC. However, the court held that the FCC could not constitutionally have the authority to impose fees under the vague standard of public policy, interest served, and other pertinent facts.

The majority opinion was criticized for stating the question as whether the fees were a tax or a fee, since that was not the question. It was also criticized for apparently holding that the overall cost to the FCC of regulating cable companies could not constitutionally be a guideline, no matter how clearly it was stated. *National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 352, 94 S.Ct. 1155, 39 L.Ed.2d 370 (1974) (dissent).

■ The case can be taken to mean that a fee is a tax if it raises revenue to cover all the government's cost of regulation but is not a tax if it is measured according to the value to the recipient of a specific benefit provided by the government. *Skinner v. Mid–America Pipeline Co.*, — U.S. —, 109 S.Ct. 1726, 104 L.Ed.2d 250 (1989). In other words, the case can be

read as making a distinction like the distinction between tax debts and business debts. A fee is not a tax if it is payment of the price for some special benefit sold by the government, but it is a tax if it is simply a method of raising money to pay the cost of government regulation.

Under this reasoning, the fees for hunting and fishing licenses would probably be viewed as a tax. The fees go into a fund to cover all the government's costs of wildlife management. Tenn.Code Ann. § 70–1–401 (Michie 1987). Though the fees are higher for commercial licenses, this does not reveal that the fees are set or could be set for everyone according to the measurable *economic* benefit each derives from hunting or fishing. The court suspects that most recreational hunters and fishers operate at an economic loss.

Cases dealing with what is or isn't a tax for bankruptcy purposes have adopted a broad definition of tax.

> Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of operating the government. We think this exaction is of that character. It is required to be paid by the corporation *in invitum*. The amount is fixed by statute, to be paid on the outstanding capital stock of the corporation each year and capable of being enforced against the will of the taxpayer. *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906).

A fee for a hunting or fishing license falls into the general category of a pecuniary burden laid upon an individual for the support of the government.

The license fee is imposed by the government. Payment of the license fee is not voluntary on the theory that it is charged only to a person who wants to hunt or fish. A person can hunt or fish without a license but is forced to buy one by the threat of fine, forfeiture, or jail if he is caught hunting or fishing without one. The license fee is collected for the support of the government. The fees from the sale of hunting and fishing licenses go into one fund for wildlife management and cannot be put into the state's general fund. Tenn.Code

Ann. § 70–1–401 (Michie 1987). Wildlife management, including control of who can hunt or fish and when or where they can do it, serves a general public purpose, not just the interest of the hunter or fisher who buys a license. Likewise, a hunting or fishing license bestows no special benefit except the benefit of being left alone by the government.

In this regard, the law is clear on two points. A charge imposed by the government is still a tax even if (1) the money goes into a special fund, and (2) the charge is imposed as part of a regulatory scheme, rather than under the government's taxing power. *In re Farmers Frozen Food Co.*, 221 F.Supp. 385 (N.D.Cal.1963) *aff'd per curiam* 332 F.2d 793 (9th Cir.1964); *In re Berkshire Hardware Co.*, 39 F.Supp. 663 (D.Mass.1941); *In re Siegelbaum's, Inc.*, 38 F.Supp. 1009 (D.Conn.1941); *In re Mytinger*, 31 F.Supp. 977 (N.D.Tex.1940) (last three cases deal with unemployment compensation fund contributions). In the case of *In re Otto F. Lange Co.*, the court said:

> It is obvious that the word "tax," as used in the Bankruptcy Act, is not used in any restricted or narrow sense, but is used broadly to include all obligations imposed by the State and general governments under their respective taxing or police powers for governmental or public purposes. That a tax so imposed may not be a general property tax does not deprive it of the character of a tax. Many taxes are imposed under the name of license fees, franchise taxes, or taxes for a special purpose under some other name, and are therefore special taxes, but they are nevertheless taxes imposed for a public purpose, no matter the name under which they are levied or imposed, and are clearly within the meaning of the term "tax" as used in the Bankruptcy Act. 159 Fed. 586, 20 Am.Bankr.Rep. 478, 480–481 (N.D.Iowa 1908).

The earlier quotation from *New Jersey v. Anderson* does hint at a distinction between a tax and a fee that a person must pay in advance if he plans to engage in some regulated activity, such as hunting, fishing, or doing business as a corporation.

The hint of a distinction concerns a fee for incorporation, but a fee for incorporation can be distinguished from a fee for a license to hunt or fish. A person could hunt or fish without a license if the state allowed it. But a corporation cannot exist without the government's approval since a corporation is a creation of the law. Furthermore, the Supreme Court may have had in mind the settled distinction between a tax debt and a business or contractual debt. The trustee in bankruptcy argued that the debt was "the result of a contract by which the corporation was brought into existence, the consideration being the payment of annual sums for the privileges given it by the state." 203 U.S. 483, 492, 27 S.Ct. 137, 140. The Supreme Court rejected the argument on the ground that there was no contract as to the charges; the state could fix the amount as it desired without the corporation's consent, and the tax applied to all corporations, including those that existed before the tax was imposed.

Since *New Jersey v. Anderson,* few cases have held government charges not to be taxes. *County Sanitation District v. Lorber Industries of California, Inc.,* 675 F.2d 1062 (9th Cir.1982); *McDowell v. City of Barberton, Ohio,* 38 F.2d 786 (6th Cir. 1930); *Pennsylvania v. York Silk Mfg. Co.,* 192 F. 81, 27 Am.Bankr.Rep. 525 (1911) (appears to be contrary to the Supreme Court's earlier decision in *New Jersey v. Anderson* ); *In re Hills,* 221 F. 260, 34 Am.Bankr.Rep. 43 (2d Cir.1915); *Bell v. Brown (In re Payne),* 27 B.R. 809, 10 Bankr.Ct.Dec. 193, 9 Collier Bankr.Cas.2d 47 (Bankr.D.Kan.1983). Only the dicta in the sixth circuit's opinion clearly supports the theory that a fee is not a tax under the bankruptcy statutes if the fee is collected in advance from people who want to engage in a particular activity regulated by the government.

The court concludes that the fees for Tennessee hunting and fishing licenses qualify as taxes under § 523(a)(1) of the Bankruptcy Code. This agrees with an unreported decision by the Bankruptcy Court for the Middle District of Tennessee; it held the fees to be taxes entitled to priority under § 507. *In re Winfrey,* No. 3–80–01915 (Bankr.M.D.Tenn., Dec. 12, 1980) (Judge Jennings).

It also agrees with the decision in *In re Bohm's, Inc.,* 5 Bankr.Ct.Dec. 259 (Bankr. D.Ariz.1979) (hunting, fishing, & camping permit fees for Indian lands were a non-dischargeable tax).

The court has already pointed out that the court of appeals for this circuit did not specifically hold that a fee for a mining permit is not a tax under the bankruptcy law. If the court of appeals had made that decision, this court would have a hard time saying that fees for hunting and fishing licenses are a tax. As it is, however, the court need not decide whether there is a valid distinction between a fee for the privilege of mining coal and a fee for the privilege of hunting or fishing.

Two questions remain. Is liability for failure to return unsold, unissued licenses a tax debt? The court can see a possible distinction; fees collected, but not paid to the state, and fees not collected for licenses actually issued appear to be taxes, but a debt for licenses not sold and not issued may not be a tax debt. The second question is whether any of the tax debt is for a tax of a kind excepted from discharge under 11 U.S.C. § 523(a)(1). The court reserves ruling on these questions.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.