**In re David L. BORK, Debtor.**

**GARROW OIL CORP., Plaintiff,**

**v.**

**David L. BORK, Defendant.**

**Bankruptcy No. 91–04925.**
**Adv. No. 91–0446.**

United States Bankruptcy Court,
E.D. Wisconsin.

Nov. 24, 1992.

Harvey G. Samson, Appleton, Wis., for plaintiff.

Paul G. Swanson, Oshkosh, Wis., for defendant.

## MEMORANDUM DECISION

M. DEE McGARITY, Bankruptcy Judge.

### ISSUE

The issue before the court is whether state and federal motor fuel taxes paid by a wholesaler/creditor on account of purchases made by the debtor/retailer are nondischargeable as to the debtor. The creditor paid the taxes and included this cost on the invoices sent to the debtor for gasoline purchases. These invoices were unpaid at the time the debtor filed his voluntary chapter 7 petition, and the creditor seeks to have the tax portion found nondischargeable under 11 U.S.C. § 523(a)(1)(A).

The creditor argues that the tax portion of its invoices are nondischargeable because the motor fuel taxes charged are excise taxes incurred within three years of filing. These taxes are entitled to priority under § 507(a)(7)(E).[1] Section 523(a)(1)(A)[2] excepts such taxes from discharge. Alternatively, the motor fuel taxes might be considered taxes that the creditor was required to collect or withhold. These taxes are entitled to priority under § 507(a)(7)(C)[3], and also excepted from discharge under § 523(a)(1)(A). Finally, the creditor argues that since it is authorized to collect motor fuel taxes from the debtor

1. **§ 507. Priorities.**
   (a) The following expenses and claims have priority in the following order:
   (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   *   *   *   *   *   *
   (E) an excise tax on—
   (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
   (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;
   11 U.S.C. § 507(a)(7)(E)

2. **§ 523. Exceptions to discharge.**
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   (1) for a tax or a customs duty—
   (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;
   11 U.S.C. § 523(a)(1)(A).

3. **§ 507. Priorities.**
   (a) The following expenses and claims have priority in the following order:
   *   *   *   *   *   *
   (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   *   *   *   *   *   *
   (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
   11 U.S.C. § 507(a)(7)(C)

as the purchaser, it is a surety for the debtor on account of its payment of taxes for which the debtor was liable.

The debtor argues that its liability for motor fuel taxes is only to the creditor from whom it purchased gasoline, not to the taxing authorities. This would remove the debtor's liability from the exception to discharge under § 523(a)(1)(A), thereby making any amount due dischargeable.

The only issue is whether the debtor's liability is nondischargeable, not whether the creditor is entitled to priority under § 507. There are no nonexempt assets in this case, and the trustee has filed a report of no distribution.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

For the reasons stated in this decision, the court is satisfied that the debtor is correct, and the debt is dischargeable.

## DISCUSSION

■ In this case, the creditor was a wholesaler, and the debtor was a purchaser of gasoline products for the debtor's gas station. Section 78.01(1) of the Wisconsin Statutes, entitled, **"Tax imposed; collected; exceptions. (1) IMPOSITION OF TAX AND BY WHOM PAID,"** applies to sales of motor fuel by a wholesaler to a retailer. The tax is imposed on "all motor fuel sold, used or distributed in this state." *Id.* The statute further provides that "the wholesaler, as defined in s. 78.08, shall collect from the purchaser and the purchaser shall pay to the wholesaler the tax imposed by this section on each sale of motor fuel by the wholesaler at the time of the sale, *irrespective of whether the sale is for cash or on credit*" (emphasis added). The tax is passed on in subsequent sales to the debtor's service station customers, the ultimate consumers, but it must be paid to the state by the wholesaler. It is the wholesaler who is liable to the state for the tax, not the retailer or consumer.

Section 78.12(2) requires a wholesaler to file reports with the state each month "for the purpose of determining the amount of his liability ..." Section 78.12(3) imposes

liability on some users other than wholesalers, none of which are applicable to the debtor. These other users are liable only for tax which "has not been paid or the *liability therefor has not been incurred by any wholesaler,*" (emphasis added). The tax is measured under § 78.01(1) by gallons sold, not by amounts collected. Here the liability is unquestionably the creditor's, and it paid the tax.

Similarly, the motor fuel tax imposed by IRC § 4081 is a liability arising from the sale of gasoline "to any person who is not registered under section 4101," with certain exceptions not applicable here. IRC § 4081(a)(1)(A)(iv). Apparently, the debtor is not a registered person, so the tax on gasoline sales to the debtor was imposed on and paid by the wholesaler/creditor. Again, the amount of the tax is based on the gallons sold, not on the gallons paid for by a purchaser. The fact that the cost will eventually be borne by the consumer does not shift the liability from the seller, who continues to be solely liable for the tax. *Martin Oil Service, Inc. v. Department of Revenue*, 49 Ill.2d 260, 273 N.E.2d 823 (1971), *cert. den.* 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1972).

It is clear that taxes of the type at issue in this proceeding would be nondischargeable if owed by the debtor, whether they are characterized as an excise tax under § 507(a)(7)(E) or a trust fund tax under § 507(a)(7)(C). Some cases have made this distinction when the tax in question was due more than three years before the date of filing and could be discharged only if characterized as a state excise tax rather than a trust fund sales tax. The latter would be a tax which a "seller of goods or services is required to collect from a buyer and pay over to a taxing authority" and is never stale. *See, e.g., In re Shank*, 792 F.2d 829, 831–33 (9th Cir.1986); *In re Edmiston*, 36 B.R. 1, 3 (Bankr.D.Kan.1982). In the present case, the distinction is important because liability for an excise tax is only on the entity collecting the tax, whereas liability for a tax that an entity is required to collect or withhold (trust fund taxes) is on both the customer or employee from whom the tax is collected or withheld

and the entity required to remit the tax to the state. The creditor pays excise taxes on its own behalf; it pays trust fund taxes on its own behalf and on behalf of its employee or customer.

The better view is that a motor fuel tax is an excise tax, and only the creditor, not the debtor, is liable for it. The Wisconsin statutes imposing the tax, quoted above, make clear that the wholesaler, and no one else, is liable. Wis.Stat. §§ 78.08(1), 78.-12(3), (4); *see also Edmiston*, 36 B.R. 1. Similarly, IRC § 4081 imposes the federal motor fuel tax on a seller, not a buyer. Although the majority in *In re Shank* held that a retail sales tax was a trust fund tax, the dissent is more persuasive. It quotes the legislative history of this subsection of § 507, which makes it clear that a "sales tax is an 'excise tax' and not a 'tax required to be collected or withheld'," and indicates that excise taxes include "sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes," (citation omitted). *Shank*, 792 F.2d at 834. Consequently, the debtor is not liable to the taxing authorities for the creditor's state and federal motor fuel taxes. If the taxing authorities had filed claims in the debtor's estate, they would not have been allowed. The exception to discharge under § 523(a)(1)(A) applies only to the debtor's liabilities to the taxing authorities; it does not apply to someone else's liabilities to the taxing authorities, nor to the debtor's liabilities to other creditors for taxes owed by the creditors.

■ Since the debtor is not directly liable to the taxing authorities, the creditor's claim for subrogation must also fail. Subrogation is an equitable remedy, not a legal right. *In re Smothers*, 60 B.R. 733, 735 (Bankr.W.D.Ky.1986). It is the right of one person to succeed to the rights of another in relation to a debt or claim, such as a third person who pays another's debt and succeeds to rights the creditor had against the debtor. *Black's Law Dictionary*, 1427, (6th ed. 1990).

*In re Norris*, 107 B.R. 592 (Bankr. E.D.Tenn.1989), is illustrative of the common use of subrogation by a surety that was obligated by contract to pay taxes that the debtor failed to pay. The debtor was found to be primarily liable to the taxing authorities; the surety was only secondarily liable. The debt for fishing license taxes would have been nondischargeable by the debtor had they not been paid by the surety; therefore, the subrogated debt to the surety was nondischargeable. *In re Fields*, 926 F.2d 501 (5th Cir.1991), *cert. den.*, —— U.S. ——, 112 S.Ct. 371, 116 L.Ed.2d 323 (1991), acknowledges a minority view but follows the majority in holding that the subrogated debt to a surety that paid a nondischargeable tax is likewise nondischargeable. *See also In re Rose*, 139 B.R. 878 (Bankr.W.D.Tenn.1992) (surety who paid the nondischargeable petroleum tax debt of the partnership in which the debtor was a general partner was subrogated to State of Tennessee's rights on a nondischargeable debt).

On the other hand, subrogation is generally not available for payment of one's own debts. *Smothers*, 60 B.R. at 735. In *Smothers*, the creditor was the debtor's partner, and both were liable for the tax paid by the creditor. No subrogation was allowed. The case distinguishes between a surety that is obligated to pay a tax only when its principal does not, and an individual that pays a tax for which both the individual and another taxpayer are liable. *See also In re Davis*, 145 B.R. 499 (Bankr. W.D.Pa.1992).

Similarly, in *In re Lapille*, 53 B.R. 359 (Bankr.S.D.Ohio 1985), the plaintiff owned a restaurant that the debtor managed. Tax returns were filed in the plaintiff's name, and the plaintiff was personally liable. A management agreement entitled the debtor to profits, less taxes and other expenses. The court said the management agreement did not change the plaintiff's primary liability as owner, and subrogation was not allowed. A principal/surety relationship does not exist when there is a contractual relationship between two entities that obligates one to pay the tax, notwithstanding the fact that only the other party to the contract is liable to the taxing authorities and may be able to pay. Fail-

ure of the contractually obligated party to pay the tax might give the responsible party a cause of action under the contract, but the contract does not change the responsible party's primary, not secondary, obligation to the taxing authorities.

Here, it was the party who was solely responsible for paying the taxes who paid them. Subrogation is available to one who pays pursuant to secondary liability, but not one who pays pursuant to primary liability.

In unusual circumstances, subrogation may be used as a way of imposing contribution or indemnification between two liable parties. In *In re Cooper*, 83 B.R. 544 (Bankr.C.D.Ill.1988), a husband and wife were co-debtors on a joint income tax return; the husband was required by the judgment of divorce to pay the tax; however, the wife paid. She was subrogated to the taxing authority under § 509(a). The court acknowledged a split of authority on the nondischargeability of a right of contribution on a nondischargeable debt but, under those facts, found the debt to the wife nondischargeable. *See also In re Zoglman*, 78 B.R. 213 (Bankr.W.D.Wis.1987).

Another case supporting the debtor's discharge of this debt is *In re Gibbs*, 11 B.R. 320 (Bankr.W.D.Mo.1981). The surety paid the debtor/husband's fuel tax. The debtor/wife was not liable on the tax. The surety was subrogated to the rights of the taxing authority to assert nondischargeability, and the debt was nondischargeable as to the husband but was dischargeable as to the wife. Since she was not liable to the taxing authorities, she could not be liable to the surety.

In the present case, the debtor/retailer is not personally liable to the taxing authorities. The creditor/wholesaler is not a surety for the debtor. The creditor was satisfying its own obligation, not someone else's, when it paid the motor fuel taxes it now seeks to collect from the debtor. Therefore, no subrogation is available. The debt to the creditor is discharged.

This decision constitutes the court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An order discharging the debt will be entered accordingly.