In re Linda Sue PERRYMAN and
William Wayne Perryman,
Debtors.

OKLAHOMA DEPARTMENT OF
WILDLIFE CONSERVATION,
Plaintiff,

v.

Linda Sue PERRYMAN, Defendant.

Bankruptcy No. 95–70829.
Adv. No. 95–7068.

United States Bankruptcy Court,
E.D. Oklahoma.

Jan. 19, 1996.

Norman D. Thygesen, Oklahoma City, Oklahoma, for Plaintiff.

Roger Hilfiger, Muskogee, Oklahoma, for Defendant.

## ORDER

TOM R. CORNISH, United States Bankruptcy Judge.

On this 18th day of January, 1996, the Plaintiff's Motion for Summary Judgment and Defendant's Response came on for consideration. Both parties agree that there are no disputed facts. The only dispute is whether the debt is dischargeable.

After a review of the above-referenced pleadings, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

## FINDINGS OF FACT

1. On or about November 26, 1986, the Debtor, Linda Sue Perryman ("Perryman"), was authorized as an agent of the Department of Wildlife Conservation ("Department") to sell hunting and fishing licenses. Perryman acted as an authorized agent of the Department personally through her business known as the Sportsman's Complex in Muskogee, Oklahoma.

2. Pursuant to a License Consignment Agreement, the Department agreed to consign hunting and fishing licenses to Perryman. The License Consignment Agreement provided, in pertinent part, as follows:

2. The Authorized Agent agrees:

\*     \*     \*     \*     \*     \*

(c) To assume all risk of loss from destruction of the consigned licenses from any cause whatsoever from the time of receiving possession of the same until sale and issuance or until returned to the Department at its Offices in the City of Oklahoma City.

\*     \*     \*     \*     \*     \*

(f) To keep all the proceeds from the sale of the hunting and fishing licenses separate and apart from other monies, and available at all times to the Department.

\*     \*     \*     \*     \*     \*

(o) A breach of the terms and conditions of this agreement or a violation of the rules and regulations of the Wildlife Conservation Commission, the Oklahoma Wildlife Conservation Code, or the Laws of the State of Oklahoma, by the Authorized Agent, shall immediately cancel and terminate the agreement, and the Authorized Agent shall be relieved of all authority as an Authorized Agent of the Department.

3. In 1992, Perryman requested 265 hunting and fishing licenses with a total consigned value of $3,525.00. Perryman failed to remit the $3,525.00 or to return the unsold licenses to the Department because a flood occurred in the Sportman's Complex and destroyed the licenses.

4. On or about December 16, 1993, the Department issued and served a written Complaint against Perryman. Perryman was personally served by the Muskogee County Game Warden, Gary Wilcox.

5. On January 7, 1994, an administrative hearing was held before the Department pursuant to Okla.Stat.Ann. tit. 29, § 4–201(C)(4) (West 1991). Perryman did not appear personally; however, her husband, William Wayne Perryman, appeared and stipulated that Mrs. Perryman had proper notification of the hearing and requested that he attend on her behalf.

6. Mr. Perryman testified that Mrs. Perryman failed to remit the money due and owing to the Department because the licenses had been destroyed in the flood. Mr. Perryman cannot specify the date on which the flood occurred.

7. Mr. Perryman also stated that he and Mrs. Perryman continued to order new 1992 licenses from the Department after the original licenses were destroyed and used the new license revenue to pay for the destroyed licenses. Mr. Perryman further testified that the value of the destroyed licenses had not been included as part of the settlement with the Defendant's insurance company after the flood had occurred.

8. The Department issued its Findings of Fact, Conclusions of Law and Final Order after the administrative hearing held on January 7, 1994. In its Order, the Department found that Mrs. Perryman had violated Okla. Stat.Ann. tit. 29, § 4–201(C)(4) (West 1991) and breached the License Consignment Agreement. The Department immediately terminated the Agreement and relieved Mrs. Perryman of all authority as an authorized agent of the Department and entered Judgment against Perryman in the amount of $3,525.00.

9. On November 30, 1994, the Department made an Application with the District Court of Muskogee County for an order to have Perryman appear and answer as to her assets. On January 6, 1995, the Department, through its legal representative, conducted a hearing on the Defendant's assets but was unable to collect on the outstanding Judgment based upon the Defendant's lack of recoverable assets.

10. On or about June 22, 1995, the Perrymans filed for Chapter 7 relief in this Court. On or about August 1, 1995, the Department filed its Complaint objecting to the dischargeability of the debt owed to it. The Department alleges that the debt is a nondischargeable tax pursuant to § 523(a)(1) of the Bankruptcy Code, or, alternatively, that the debt is nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code, which provides that an individual debtor is not discharged from a debt arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

### CONCLUSIONS OF LAW

A. Section 523(a)(1) of the Bankruptcy Code provides:

(a) A discharge . . . does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed.

Section 507(a)(8)(C) when incorporated into § 523(a)(1) makes taxes required to be collected or withheld and for which the debtor is liable nondischargeable.

B. In *Safeco Ins. Co. of America v. Norris (In re Norris)*, 107 B.R. 592, 598 (Bankr.

E.D.Tenn.1989), the court held that a fee collected for hunting and fishing licenses was a pecuniary burden upon an individual for the support of the government and was therefore a tax. In *Norris*, the debtor failed to pay the state the fees he had collected from the sale of hunting and fishing licenses. *Id.* at 593. The Plaintiff was the surety. The court found that the Plaintiff was subrogated to the state's rights. *Id.* at 594. Thus, the court found that the debt was nondischargeable. *Id.* at 599. However, the court noted that it saw a distinction between the issue before it and the issue of whether liability for failure to return unsold, unissued licenses was a tax debt.

 C. What the court in *Norris* did not decide is precisely the issue before this Court: whether the liability for failure to remit the unsold, unissued hunting and fishing licenses is nondischargeable as a tax debt pursuant to § 523(a)(1). Section 523(a)(1) incorporates § 507(a)(8), which is the section potentially applicable in this case. Section 507(a)(8) requires that the tax be "collected" or "withheld."

The tax for hunting and fishing licenses cannot be "collected" or "withheld" until the licenses have been sold. Thus, there is no tax debt until the licenses are sold and the debt cannot be held nondischargeable pursuant to § 523(a)(1).

 D. Alternatively, the Department alleges that the debt is nondischargeable pursuant to § 523(a)(4). Section 523(a)(4) provides:

> (a) A discharge ... does not discharge an individual debtor from any debt—
>
>     \*     \*     \*     \*     \*     \*
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

It has been stated that the scope of "fiduciary" under § 523(a)(4) is a question of federal law. *Auto Owners Ins. Co. v. Littell (In re Littell)*, 109 B.R. 874, 878–9 (Bankr.N.D.Ind. 1989). In order for there to be a fiduciary relationship, there must be a technical or expressed trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54,

79 L.Ed. 393 (1934). The court, in *Littell*, stated that a court should consult state law on the issue of whether a trust exists; however, the question ultimately is one of federal law. *Littell* at 880. The Plaintiff must show that the debtor was a trustee before the wrong occurred, without reference to the wrong and be independent of the wrong. *Id.* (citations omitted).

 The Court has reviewed the state statutes regarding consignment of hunting and fishing licenses. There is no language in the statutes concerning a trust or a fiduciary relationship. In the Agreement, the only thing which can be viewed as imposing a trust-like duty would be the requirement to separate the funds from the sale of licenses. However, this is the only language which even implies a trust relationship. Neither the statute nor the Agreement sets forth a trust res. The Agreement refers to Perryman as an agent, not as a fiduciary as we have in the collection of sales taxes which are collected by merchants. Considering all the circumstances, this Court finds that there was no fiduciary relationship created and thus, the debt is dischargeable.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Summary Judgment is **denied.** The debt owed to the Oklahoma Department of Wildlife Conservation is **dischargeable.**