## OUTHWAITE, Estate of, In re.

Probate Court, Franklin County.

No. 110657.  Decided September 27, 1949.

H. Paul Joseph, Columbus, for Anne S. Outhwaite, Executrix.
Paul M. Ashbaugh, Columbus, for Massachusetts Bonding
and Insurance Company.

For Court of Appeals decision see **57 Abs 238.**

### OPINION

By McCLELLAND, PJ.

This matter comes before the Court upon the exceptions
filed herein by The Massachusetts Bonding and Insurance
Company to the first and final account of Anne S. Outhwaite,
as Executrix of the will of Charles P. Outhwaite, deceased.
The exceptions challenge the correctness and propriety of
the payment of $13,500.00 to the Ohio National Bank of Co-
lumbus, Ohio, which payment was made by Anne S. Outh-
waite, the widow of the decedent, out of her own personal
funds.  The matter was submitted to the Court upon a Stipu-
lation of Facts signed by the attorney for the Executrix,
and Paul M. Ashbaugh, attorney for the Exceptor.  The
Stipulation of Facts is hereby adopted as the facts upon
which this Court will make its decision, and which will be
considered a part thereof.

This Court is first impelled to make the observation that the Massachusetts Bonding and Insurance Company is not an interested party in this matter, at the present time, and therefore is not entitled to file exceptions. The Court, however, will consider the exceptions and will also consider the memorandum filed by the attorney for the Exceptor, as a memorandum filed by a friend of the Court.

It is the contention of the Exceptor that Anne S. Outhwaite, in paying the note to the Ohio National Bank in the amount of $13,500.00 was a volunteer, and, as a result thereof, she is not entitled to be subrogated to the rights of the creditor whose claim was paid.

A most illuminating discussion of the legal question raised by the Exceptor is found in Vol. 4, of the 5th Edition of Pomeroys Equity Jurisprudence, at Section 1211, which reads as follows:

"EQUITABLE ASSIGNMENT BY SUBROGATION.—Under some circumstances, the payment of the amount due on a mortgage when made by certain classes of persons, is held in equity to operate as an assignment of the mortgage. By means of the payment the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved, for his benefit and security. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment and the securities themselves were not delivered over to the person making payment, and even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit."

In the following Section 1212, is a discussion as to benefits of an equitable assignment. The author in that section uses the following language:

"Equity does not admit the doctrine of equitable assignment in favor of every person who pays off a mortgage. Such relations must exist towards the mortgaged premises or with the other parties, that the payment is not a purely voluntary act, but is an equitable necessary or proper means of securing the interests of the one making it from possible loss or injury. The payment must be made by or on behalf of a person who had some interest in the premises, or some claim against other parties, which he is entitled, in equity, to have protected and secured."

Anne S. Outhwaite, the person who paid this note is not only the Executrix of the will of the decedent, but is also the widow, and either the sole or only devisee or legatee of the decedent. Had the decedent's estate been entirely solvent, then this property would have passed to the beneficiaries of his will, one of whom was Anne S. Outhwaite. She, therefore, had a direct interest in the property under investigation.

The author, in the same section, uses the following language:

"A mere stranger, therefore, who pays off a mortgage as a purely voluntary act can never be an equitable assignee. Such a stranger, having no interest in the premises and no relations with the parties cannot even compel the mortgagee to accept payment of the amount due on the mortgage. If the mortgagee voluntarily accepts the money, he cannot be compelled to assign the mortgage to the stranger. If the mortgagee consents both to accept the money and to give an assignment, then the transaction becomes an ordinary purchase of the mortgage by the stranger, which can always be affected with the mortgagee's consent, but never without. In no case, therefore, can the stranger voluntarily paying occupy the position of an equitable assignee,—he can never claim to be subrogated to the rights of the mortgagee."

The Stipulation of Facts is entirely silent as to whether or not the mortgagee assigned note and collateral to Anne S. Outhwaite. If there was an explicit assignment, then, of course, there can be no question. If there was not a specific assignment, the circumstances are such, which, in equity, gives rise to an equitable assignment.

Then, in a later paragraph in the same article, the author uses the following language:

"The class of persons coming within this description include the grantee from the mortgagor or any subsequent grantee who has taken the land simply subject to the mortgage; the heir or devisee of the mortgagor: the widow of the mortgagor or of any subsequent owner: * * *"

This Court fully appreciates the fact that a treatise is not of itself an authority, but this Court knows that the statements contained therein are based upon well adjudicated cases to which reference is made in the text from which the Court has quoted.

Not only do we find authority in the above quotations, but we also find a statement contained in **38 O. Jur., 294**, under the title of "Subrogation" which sustains also the foregoing proposition. I quote as follows from Section 44:

"Generally, a person, having an interest in an estate, who makes payment of debts due by the decedent's estate becomes a creditor of the estate and is subrogated to the rights of the creditors or the executor or administrator."

The author refers to the case of **Conger v. Atwood, 28 Oh St** page **134.** Also the case of **Stayner v. Bower, 42 Oh St,** page **314;** also the case of Glenn v. Eicher, 11 O. C. C. N. S. page 95, also supports the proposition that a wife or widow paying debts of her husband's estate is entitled to subrogation therefor.

Upon an examination of the subject of Subrogation, contained in Vol 50 American Jurisprudence, at page 699, we find the following language:

"The right of subrogation is not necessarily confined to those who are legally bound to make the payment, but extends as well to persons who pay the debt in self-protection, since they might suffer loss if the obligation is not discharged. In this class are included subsequent encumbrancers paying off a prior encumbrance. The extent or quantity of the subrogee's interest which is in jeopardy is not material. If he has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could. It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect."

The statement of the text is amply supported by the

decisions of courts of last resort to which reference is therein made. In our opinion the principle set forth in the text hereinbefore quoted amply justifies the position of Mrs. Outhwaite in making the payment which she made and in assuming that she would be subrogated to the rights of the creditor whose claim was paid.

In this case it was the widow of the mortgagor, and also the beneficiary under his will, who paid the mortgage. She had an interest in the property. The Stipulation of Facts also recite that Anne S. Outhwaite, at the time she made this payment, was not aware that the estate was insolvent. It appears that the estate was insolvent. The payment was made on or about the date the note was due. By making such payment she avoided a sale of the property which the bank indeed had a right to make. The collateral might have been sold for less than the face of the note, and, had that been the case, the bank would still have been a creditor of the estate of Mr. Outhwaite. In other words, the creditor was made whole.

As we have heretofore observed, Anne S. Outhwaite was either a legal assignee or an equitable assignee of the note and collateral securing same. Sometime thereafter, Anne S. Outhwaite sold all of that collateral and received dividends thereon up until the time of sale. She realized the sum of $12,349.86. Subsequent thereto, in order to make herself whole, she withdrew from the estate the sum of $1150.14. Had she not paid this note, but permitted the bank to sell the securities, the bank would have had a claim against the estate for the difference between the sale price and the amount due on the note. Inasmuch as the estate was hopelessly insolvent, the bank would have lost the difference between the sale price and the amount due on the note.

When Anne S. Outhwaite received the assignment she became the owner of the note and also of the securities which were deposited for the payment of same. When she sold her securities, which netted her $1154.14, less than the amount which she paid, she then becomes a general creditor of the estate in the amount of $1154.14. It is our opinion, therefore, that she preferred herself as a creditor when she paid herself that sum.

The Court therefore, of its own motion, orders that the inventory be corrected, conforming to the facts, and that Anne S. Outhwaite be required to restore the sum of $1154.14 to the estate of the decedent.