**In re William Patrick LAPILLE, SS # 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, Francine Lapille, SS # 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, Debtor.**

**DON-SUE INVESTMENTS, INC., Plaintiff,**

v.

**William Patrick LAPILLE, Defendant.**

**Related Case No. 1-85-00296.**
**Adv. No. 1-85-0173.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Sept. 30, 1985.

Michael Wiethe, Cincinnati, Ohio, for plaintiff.

Edward Collins, Cincinnati, Ohio, for defendant.

**DECISION**

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff brought this adversary proceeding for a determination of the discharge-

ability of a debt owed to plaintiff by defendant. The parties have submitted legal memoranda and a stipulation of fact to the Court for a decision.

The relevant facts appear in the stipulation and are as follows. Plaintiff, as owner of an enterprise named Zimmer's Restaurant, entered into a lease agreement and management contract with defendant whereby defendant and two other persons were to lease the restaurant premises and equipment from plaintiff, and operate the restaurant. The lease and management contract are attached to the stipulation and made a part thereof. Under the lease agreement, defendant was required to post a $25,000 security deposit to indemnify the plaintiff for any loss caused by default of the lease or management agreement. Further, under the lease agreement the defendant had an option to purchase the property with the restaurant equipment for a stated price. The purchase would be conditioned upon transfer of the liquor permit from the landlord to the tenant.

The management contract designated the plaintiff as "Owner" and the defendant as "Manager". The contract sets up an arrangement whereby Owner, who owns certain real estate and restaurant equipment, as well as a liquor license used in the operation of a business known as Zimmer's Restaurant, employs defendant and two others as managers to "operate and supervise the operation of a similar business". Under the management contract the defendant is obligated to lease the building and restaurant equipment and agrees to manage a restaurant business for three years. The contract further states:

> The Owner agrees to pay the managers as a salary the profits of the business which is subject, however, to all expenses of operating the business including interest payment, mortgage payment rental payments, and and all other items deducted in the computation of Owner's Federal Income Tax being paid first and in conjunction with the lease agreement of the parties executed herewith. Said deduction of the expenses of the business shall include the following, but shall not be limited to:
>
> \* \* \* \* \* \*
>
> (d) All taxes, including Federal, Social Security and witholding taxes on weekly salaries of employees, State sales tax, Federal excise tax and all other government taxes required by law to be paid in connection with the operation of the business: ...

The management contract stated that if the business expenses exceed the income of the business, "then no claim shall exist for the difference". Furthermore, if income exceeds expenses, the managers are entitled to that amount as a "bonus". In Item 4 of the management contract, the managers agreed to be responsible for their own Social Security and withholding payments.

It is further stipulated that the real estate and restaurant business were never sold to the defendant nor was the liquor license ever transferred to the defendant. The stipulations state that defendant incurred tax obligations including, but not limited to, Ohio Unemployment, Workers Compensation, Sales Tax and Federal Unemployment. Defendant filed various tax returns in the name of the plaintiff on behalf of the restaurant. Plaintiff has paid some of the tax liabilities out of the $25,000 security deposit. However, the "final figures" have not been determined. The stipulation does not recite what amounts of taxes are owed or what amount has been paid by the plaintiff.

Plaintiff seeks to have the amount it paid to the taxing authorities declared nondischargeable. Its theory is that defendant was obligated to pay certain taxes incurred in operation of the restaurant business pursuant to the management contract. Plaintiff in fact paid those taxes. Plaintiff therefore is entitled to be subrogated to the rights of the taxing authorities. A taxing authority having the right to have tax debts held nondischargeable in bankruptcy, the amount defendant owes plaintiff under the management contract should

likewise be held nondischargeable. Plaintiff relies on § 523(a)(1)(A) which states:

(A) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not a claim for such tax was filed or allowed;

. . .

The argument advanced by plaintiff requires this Court to address two issues. The first is whether the taxes which defendant was required to pay under the management contract are of the kind and for the periods specified in section 507(a)(2) or 507(a)(6). If they are, we must consider the second issue, whether plaintiff is subrogated to the rights of the taxing authorities by virtue of the fact that he paid the taxes.

The record before us does not enable us to address the first issue definitively, since the parties have not specified the types of taxes that were paid by the plaintiff, nor have they put into the record any information about the periods for which any taxes were due. For present purposes, therefore, we will assume arguendo that the taxes in question are nondischargeable.

As to the second issue, we conclude that under these facts, the plaintiff is not subrogated to the rights and remedies of the taxing authorities. Subrogation is defined as:

"[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities.

\*        \*        \*        \*        \*        \*

The right of one who has paid an obligation *which another should have paid* to be indemnified by the other." Black's Law Dictionary (5th ed. 1979) (Emphasis added)

Although there are many situations in which the right of subrogation arises, it is clear that it does not arise in the present situation. As stated in 73 Am.Jur.2d, Subrogation, § 11:

"There are, however, certain elements or conditions which must be present in every case in which legal subrogation is sought. *In the first place, there must be a debt or obligation for which parties other than the subrogee are primarily liable,* for which he as surety, guarantor, or in some other capacity discharges for the protection of his own rights or interests . . ." (Emphasis added)

In the present case, the stipulation of fact and the management agreement make it clear that the plaintiff remained the owner of the business and the liquor license and the contemplated sale of the business to the defendant was never completed. There is no dispute that the plaintiff was at all times when taxes could be assessed, the owner of the restaurant business and the liquor license. He was therefore liable for the taxes incurred by operation of the business.

The existence of the management contract did not alter plaintiff's primary liability to the taxing authorities. The management contract created a contractual obligation between plaintiff and defendant which would give plaintiff a cause of action against the defendant for breach of contract, and a claim in this bankruptcy proceeding for damages for the breach, but it does not create a right of plaintiff to be subrogated to the taxing authorities. The factual stipulations point out that the tax returns were completed and submitted to the various taxing authorities in the plaintiff's name which is a further indication that the plaintiff, not the defendant, was primarily responsible to the various taxing authorities.

In a case with facts similar to this case, the Court found that there was no right to subrogation. In *In re Davis*, 13 B.R. 456 (Bankr.S.D.Ohio 1980), the husband was a sole proprietor of a business and owned the vendor's license. In the divorce settlement between the husband and wife, wife agreed

to pay the sales tax assessed against the vendor's license in return for an interest in the business. Wife failed to pay the taxes pursuant to the divorce decree and later filed bankruptcy. Husband attempted to have the debt declared nondischargeable and relied on § 17(a)(1) of the Bankruptcy Act of 1898 (the forerunner of § 523(a)(1)(A)). The Court found that the debt owed husband was dischargeable stating:

> "To come within the provisions [of § 17(a)(1)] the plaintiff must show that the tax debt was owed to the state by the bankrupt.
>
> \*   \*   \*   \*   \*   \*
>
> The vendor's license issued by the State of Ohio was solely in [husband's] name prior to the divorce decree. Furthermore, the tax assessments which are part of the record show assessments by the State of Ohio against [husband] only. This Court therefore finds that [wife] has no original tax liability to the State of Ohio for any sales tax due.
>
> \*   \*   \*   \*   \*   \*
>
> The divorce decree did not create a liability of [wife] to the State of Ohio."

*Id* at page 459. The Court further stated:

> "The provision, embodied in the separation agreement and incorporated in the divorce, decree which places upon [wife] the liability for past sales taxes due to the State of Ohio from [the business], created a debt to [husband] from [wife]. This is a debt, but not a tax debt, and as a non-tax debt, the provision of § 17(a)(1) excepting certain tax debts from discharge is not applicable."

Plaintiff cites several cases in its memorandum supporting its position that plaintiff should have a right of subrogation. *In re Outhwaite*, 42 Ohio Ops. 442, 94 N.E.2d 122 (Probate Court Franklin County 1949), relied on by plaintiff, is distinguishable because it deals with a widow who paid a debt on a note owed by her deceased husband. She was not primarily liable on the note.

The other cases cited by plaintiff in which the courts found the creditors were properly subrogated to the rights of the taxing authorities are distinguishable in that all of those cases dealt with contractual suretyship arrangements. Although those decisions did not turn on the existence of a contract, the courts found that surety relationships gave rise to the legal right of subrogation. *See, Matter of Waite*, 698 F.2d 1177 (11th Cir.1983); *Gilbert v. U.S. Fidelity & Guaranty Co.*, 180 F.Supp. 794 (D.C.Ga.1959) aff'd 274 F.2d 823 (5th Cir. 1960); *In re Hancock*, 36 B.R. 709 (Bankr. S.D.Ill.1984); *In re Woerner*, 19 B.R. 708 (Bankr.D.Kansas 1982). Plaintiff cannot contend that the present set of facts create a suretyship arrangement. A surety is "one who undertakes to pay money in the event that his principal fails therein ..." *Black's Law Dictionary* (5th ed. 1979). Here, however, plaintiff was the principal obligor; he was not the surety.

We find that the debt owed to the plaintiff by the defendant for the amount of taxes incurred by defendant in the operation of the restaurant business is a dischargeable debt.