**In re Mark H. KNEVEL and Cynthia Knevel, Debtors.**

**Bankruptcy No. B88–03794.**

United States Bankruptcy Court, N.D. Ohio.

June 23, 1989.

Stephen D. Hobt, Strachan, Green, Miller, Olender & Hobt, Cleveland, Ohio, for debtors.

John P. Malone, Jr., Cleveland, Ohio, for objectors.

MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

The matters before the Court arise out of an objection to confirmation of the Debtors' Chapter 13 plan filed on behalf of Diane L. Scott–Cool and John W. Cool on January 5, 1989 (the "Objection"). The Debtors' plan came on for confirmation on January 10, 1989. The standing Chapter 13 trustee recommended confirmation conditioned upon the Debtors overcoming the Objection. It soon became apparent, however, that the

Objection reflected the continuation of pre-filing litigation between the parties and could not be ruled upon at that hearing. Therefore we transferred the case to the Court's pre-trial docket.

On January 24, 1989 the Debtors filed an objection to the allowance of the Cools' claim and a motion to value the collateral of the Cools. The Cools filed a response to that pleading on January 31. The Court held a preliminary pre-trial conference on February 15. At that conference the parties agreed that there were no disputed issues of fact. The Court authorized the parties to file additional briefs on the issues and took the matter as heard and submitted. The Debtors and the Cools thereafter filed briefs in support of their positions.

The facts on which the parties' pleadings agree or which appear undisputed from the record or statements of counsel are as follows:

1. In June 1980 the Cools, as Seller, and the Debtors, as Purchaser, signed a brokers one-page printed form contract (the "Sales Contract") for the sale and purchase of a home at 6624 Cypress Avenue in North Olmsted, Ohio (the "Property"). One nonstandard provision in the Sales Contract, and the one that has generated the present dispute, is a typewritten statement that "buyer assumes 10% VA Mortgage with Mellon Mortgage and agrees to obtain conventional financing by July 15, 1982" (the obligation to refinance is hereinafter referred to as the "Refinancing Commitment").

2. The sale of the Property was consummated on July 15, 1980 upon the filing of the Cools' deed with the Recorder for Cuyahoga County, Ohio (the "Deed"). The Deed is a statutory Ohio form of deed which under section 5302.04 of the Ohio Revised Code purports to convey to the Debtors the Cools' entire interest in the Property; no mention is made of the Sales Contract or of the Debtors' Refinancing Commitment. However the Deed expressly makes the grant of the Property subject to

"restrictions of record taxes and assessments for the first half 1980 and thereafter and a first mortgage to Mellon National Mortgage Co. of Ohio recorded in Volume 15341 P 863, assigned to Manhattan Savings Bank in Volume 1264 P 679 of Cuyahoga County Records, with an approximate balance of $79,490.00 which the grantees herein assume and agree to pay."

3. The Debtors did not refinance the Property and the Property continues subject to the mortgage described in the Deed (the "Mortgage"). The Debtors' failure to refinance apparently led the Cools to file a complaint for fraud, breach of contract and equitable relief in the Court of Common Pleas of Cuyahoga County, Ohio (the "Complaint") prior to the commencement of this case. In the Complaint the Cools allege not only that they continue to be personally liable under the debt secured by the Mortgage, a conclusion which has not been disputed, but that they have incurred attorneys fees, real estate fees and title fees and have suffered other monetary damages and lost opportunities, all in unspecified amounts. It appears doubtful from their pleadings that the Cools believe that these incidental or additional damages are secured. But their pleadings are too diffuse to rule out that possibility.

4. Debtors assert that the Property has a value of $90,000 and that the unpaid balance of the mortgage is only $74,000. The Debtors also assert that the Property is encumbered by a lien in favor of the Internal Revenue Service in the amount of nearly $59,000, which would have priority over any interest in the Property claimed by the Cools. Although the Cools do not appear to take issue with Debtors' valuation of the Property or the balance of the Mortgage, they have not on the record acknowledged the priority of the tax lien. In any event this issue need not be resolved to rule on the Objection.

The only determination required to rule on the Objection is whether or not any claim by the Cools, apart from the Mortgage itself, is now an allowable secured claim under the Bankruptcy Code. The

Debtors' plan makes no allowance for any such secured claim. If one exists, the plan would not meet the requirements of section 1325(a)(5) of the Bankruptcy Code and could not be confirmed. If no secured claim is allowable, the plan is confirmable notwithstanding the possibility that some claim of the Cools might be allowed in the future. The Cools ground their contention that they have a lien on the Property on the following section of the Ohio Revised Code:

§ 5301.26 *Vendor's lien.*

As between the vendor and vendee of land the vendor shall have a lien for so much of the purchase money as remains unpaid. Such lien shall not be effective as against a purchaser, mortgagee, judgment creditor, or other encumbrancer, unless there is a recital or a reservation of the lien in the deed, or in some instrument of record executed with the same formalities as are required for the execution of deeds and mortgages of land. The vendor waives his lien by taking a mortgage for any unpaid purchase money on the land conveyed or any part thereof, and the filing for record of such a mortgage with the county recorder of the county in which said land is located shall be constructive notice of the waiver of the vendor's lien.

Although, as noted, their view of the reach of this section is a bit unclear, we have assumed that they contend, or may contend, that section 5301.26 created for their benefit a lien securing (a) their residual personal liability under the Mortgage and the indebtedness it secures, and (b) their damages arising out of the Debtors' alleged breach of the Refinancing Commitment.

On its face it appears that section 5301.-26 is inapplicable to the facts of this case. At the July 15, 1980 closing the Cools received all that they had bargained for—the Cools' assumption of the Mortgage and whatever additional funds were then required to be paid under the Sales Contract. They received in addition the Debtors' promise in the Sales Contract to refinance in two years. The fact that the two-year liability under the Mortgage the Cools bargained for has stretched out an additional seven years and threatens to continue means that their expectations have been frustrated but not that they failed to receive the purchase price.

But even if section 5301.26 could be made to fit their situation, nothing in section 5301.26 would add or detract from the security provided the Cools by the Mortgage. Under applicable subrogation principles the cools are entitled to the benefit of the Mortgage if called upon to make any payment on the indebtedness it secures. *See, e.g., Union Central Life Insurance Co. v. Emigh,* 82 Ohio St. 251, 254, 92 N.E. 438 (1910); *Smith v. Folsom,* 80 Ohio St. 218, 88 N.E. 546 (1909); *In re Outhwaite,* 58 Ohio L.Abs. 97, 94 N.E.2d 122 (Franklin Cty.1949); *aff'd* 42 Ohio Op. 445, 94 N.E.2d 59 (1950). Moreover, section 5301.26 expressly provides that the vendor waives his lien by taking a mortgage for the balance of the purchase price. If, as they argue, the unpaid balance of the Mortgage were to be viewed as unpaid purchase price, the Cools in effect took the Mortgage as security therefor.

Section 5301.26 is a codification of Ohio common law which accords the unpaid seller *in rem* rights against real estate for the deferred balance of the purchase price. *Cleveland Trust Co. v. Bouse,* 163 Ohio St. 392, 397, 127 N.E.2d 7 (1955); *Crabtree v. Haladye (In re Crabtree),* 14 B.R. 601, 605 (Bankr.N.D.Ohio 1981). The Cools cite no authority for the proposition that this vendor's lien is applicable to their damages, if any, arising out of the Debtors' failure to perform the Refinancing Commitment.

The Cools' real intent in asserting a secured claim is disclosed in their brief filed on January 31. There the Cools request this Court to "enjoin the debtors, the Veterans Administration and the mortgagee to execute and deliver a complete release of liability of the Cools; or in the alternative to admit, by pleading or otherwise, that there has been a *de facto* release of liability." The Cools' brief filed April 7 hammers away at the same point. It cites at length sections of the United States Code dealing with the release from liability un-

der a VA mortgage and demands that such release be obtained on behalf of the Cools. Although presented in terms of a secured claim, the Objection in effect demands that confirmation of the Debtors' plan be held hostage to specific performance of the Refinancing Commitment.

The Bankruptcy Code provides no support for this result either directly or indirectly through the leverage of a secured claim. This conclusion is also dictated by the treatment of the claims of creditors who are liable with the debtor on, or have secured, the debtor's debts under sections 502(e)(1) and 509 of the Bankruptcy Code.

Under section 502(e)(1)(B) the co-debtor's claim is disallowed if at the time of allowance it is contingent. Upon the Debtors' assumption of the Mortgage in 1980, the Debtors assumed primary responsibility to pay the Mortgage debt. Although the Cools assert that their liability is not contingent, this assertion is clearly wrong. Since the closing the mortgagee has accepted payment from the Cools, and so far as appears from the record, has not made demand upon or proceeded against the Cools to collect the Mortgage debt. In fact it appears that the Cools' obligation is, as a practical matter, contingent upon both the Debtors' failure to pay and the Property bringing less at foreclosure sale than the Mortgage debt.

The contingent character of the Cools' liability is highlighted by the provisions of section 1813 of Title 38 of the United States Code quoted by the Cools in their brief filed April 7.[1] Part (a) of section 1813 provides for release of personal liability upon the veteran's disposal of residential property subject to a VA mortgage; part (b) provides for release of liability of the veteran even after default, if the Administrator would have released the veteran if he had applied for release in connection with the disposal. Therefore the Cools' liability appears subject to administrative discretion even if the Debtors default and the Property does not satisfy the Mortgage debt.

 Contrary to the Cools' urging, however, the Court has no basis on which to force the Veterans Administration to release the Cools, nor is the Court persuaded that the equities require such order. These same statutory provisions were in effect in 1980. For reasons satisfactory to them, the Cools apparently chose to dispose of the Property without obtaining release from liability and to rely instead on the Debtors' promise to effect that release two years later.

This is not to prejudge any claim which the Cools may have or assert against the Debtors for breach of the Refinancing Commitment. It is, however, clear that such damages, if any, would be an unsecured, not a secured, claim.

Based on the foregoing the Objection is overruled, the Debtors' objection to the Cools' proof of claim is sustained and the motion to value the collateral of the Cools is denied.

IT IS SO ORDERED.

---

1. The Cools quoted material from what was asserted to be 38 U.S.C. section 1817; although the quoted passage was formerly section 1817, it has been renumbered as section 1813.